[Cite as *State v. Collins*, 2019-Ohio-2407.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KHALIS COLLINS,

Defendant-Appellant.

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 CO 0012**

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2016 CR 00123

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed

*Atty. Robert Herron, Prosecuting Attorney and Atty. Alec Beech, Assistant Prosecutor*, Columbiana County Prosecutor's Office, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Timothy Young, Ohio Public Defender and Atty. Jeremy Masters, Assistant Public Defender*, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for Defendant-Appellant.

Dated:
June 14, 2019

**Donofrio, J.**

{¶1}    Defendant-appellant, Khalis Collins, appeals from a Columbiana County Common Pleas Court judgment convicting him of tampering with evidence, obstructing official business, possession of drugs, and complicity to illegal conveyance of drugs onto the grounds of a detention facility, following a jury trial.

{¶2}    On March 31, 2016, the Columbiana County Drug Task Force set out to execute a search warrant at an apartment in Lisbon where Jermaine Lewis and Calvin McConn resided.  The search warrant also authorized officers to search a vehicle located at that apartment.  As the officers were observing the apartment, the suspect vehicle drove away.  Lisbon Police Chief Michael Abraham initiated a traffic stop of the vehicle. Appellant was a passenger in the vehicle along with Khamray Bonner.  Courtney Wilson was the driver.  Chief Abraham noticed a lot of movement inside the vehicle and ordered the occupants out.  They did not initially exit and continued to move about.  They eventually complied.  After a pat-down search for weapons, an officer transported appellant and Bonner back to the apartment where the task force was executing the search warrant.  Another officer transported Wilson back to the apartment.

{¶3}    At the apartment, Wilson told the officers appellant and Bonner had asked her to hide their drugs for them but she had refused.  Deputy Brett Grabman subsequently searched appellant while they were outside of the apartment.  The deputy noticed that appellant clenched his buttocks and refused to comply with the deputy's order to stop. Additionally, appellant gave a false name and birth date to the officers.  Officers placed appellant and Bonner under arrest.  They also arrested Lewis, who was home at the apartment when officers executed the warrant.  Deputy Grabman transported the three men to the Lisbon Police Department for booking.

{¶4}    Deputy Grabman left the three men alone together in the booking room. They were individually handcuffed and sitting on a bench.  Video surveillance from inside

Case No. 18 CO 0012

the booking room showed Bonner and then appellant lean up against Lewis and appear to remove something from the back of their pants and transfer it to Lewis. Lewis then appeared to thrust his hips forward and insert the items into the back of his pants.

{¶5}     After they completed the booking process, Deputy Grabman transported the three men to the county jail.  Upon their arrival at the jail, each man was "dressed out," meaning they were required to remove their street clothes in front of the officers and put on their jail-issued uniform.  When Bonner was dressed out, the officers noticed a white substance around his anus.  And when Lewis was dressed out, the officers found two baggies of what appeared to be drugs protruding from Lewis's buttocks.

{¶6}     A Columbiana County Grand Jury indicted appellant on one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1), with a forfeiture specification; one count of obstructing official business, a second-degree misdemeanor in violation of R.C.2921.31(A); one count of possession of drugs, cocaine in an amount equal to or exceeding five grams but less than ten grams, a fourth-degree felony in violation of R.C. 2925.11(A); and one count of complicity to illegal conveyance of drugs onto the grounds of a detention facility, a third-degree felony in violation of R.C. 2921.36(A)(2) and R.C. 2923.03(A)(1).  Appellant pleaded not guilty.

{¶7}     The matter proceeded to a jury trial.  The jury returned guilty verdicts on all counts.

{¶8}     The trial court subsequently sentenced appellant to 36 months in prison for tampering with evidence, 90 days in jail for obstructing official business, 12 months in prison for possession of drugs, and 36 months in prison for illegal conveyance of drugs onto the grounds of a detention facility.  The court ordered appellant to serve the sentences consecutively with the exception of the 90-day jail sentence, which it ordered appellant to serve concurrently to the prison sentences.  Thus, appellant's sentence totaled seven years.

{¶9}     Appellant filed a motion for delayed appeal on April 16, 2018, which this court granted.

{¶10}    Appellant raises two assignments of error.  His first assignment of error challenges his tampering with evidence conviction.  His second assignment of error

challenges his illegal conveyance conviction. Appellant does not take issue with his possession of drugs conviction or his obstructing official business conviction.

{¶11}    Both of appellant's assignments of error raise sufficiency of the evidence arguments. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶12}    Appellant's first assignment of error states:

KHALIS COLLINS'S CONVICTION FOR TAMPERING WITH EVIDENCE UNDER R.C. 2921.12(A)(1) IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶13}    Appellant argues here that his tampering with evidence conviction is not supported by sufficient evidence. He contends that at the time he allegedly concealed the drugs, he was not under investigation for a drug crime. Instead, he argues, he was merely a passenger in a car that was subject to a search warrant. Therefore, he reasons, he could not be convicted of tampering with evidence.

{¶14}    The jury convicted appellant of tampering with evidence in violation of R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶15}    We must examine the evidence set out at trial to determine if the state presented evidence going to each of the elements of tampering with evidence.

{¶16}    Lisbon Police Chief Michael Abraham testified first. Chief Abraham stated that on March 31, 2016, Deputy Brett Grabman, a member of the Columbia County

Drug Task Force, contacted him to advise him that the task force was going to execute a search warrant at an apartment in Lisbon. (Tr. 125). A gray Ford Focus was also subject to the search warrant. (Tr. 126). As the task force was approaching the apartment door, the Ford Focus drove away. (Tr. 127). Deputy Grabman contacted Chief Abraham to stop the vehicle. (Tr. 127). Chief Abraham initiated a traffic stop of the vehicle. (Tr. 128). He stated that Courtney Wilson was the driver, appellant was in the front passenger seat, and another man was in the back seat. (Tr. 128).

{¶17} The chief testified that when he approached the vehicle, he noticed a lot of movement by the two passengers. (Tr. 129). He ordered the passengers to stop moving and to show their hands but they did not initially comply. (Tr. 129-130). The three occupants eventually complied and exited the vehicle. (Tr. 131). After the vehicle was secured, Chief Abraham drove Wilson to the apartment where the task force was executing the search warrant while another officer drove appellant and Bonner back to the apartment. (Tr. 132-133).

{¶18} Lisbon Police Officer Fred Carlisle testified next. Officer Carlisle assisted the chief with the traffic stop. Officer Carlisle stated that when appellant exited the vehicle, he patted appellant down for weapons and then placed appellant in his police cruiser. (Tr. 158). Upon conducting the pat-down, Officer Carlisle located money on appellant, which Officer Carlisle removed from appellant's pocket. (Tr. 159). The money was later determined to be $932. (Tr. 235). The officer then drove appellant and Bonner to the apartment where the task force was executing the search warrant. (Tr. 160).

{¶19} East Palestine Police Officer Matthew Elser was the state's next witness. Officer Elser is also a member of the Columbiana County Drug Task Force. He assisted in the execution of the search warrant by searching the vehicle. Officer Elser testified that upon searching the vehicle, he found a digital scale, $1,566 in cash, a "tear-off" with marijuana residue, and five cell phones. (Tr. 167). Included in the stack of currency, was a ten-dollar bill that the task force had used in a controlled purchase of drugs. (Tr. 168). Officer Elser was able to identify the ten-dollar bill by its serial number. (Tr. 168). The officer explained that when the task force makes a controlled drug purchase, they make copies of the money they will use so as to record the serial numbers. (Tr. 170). That

way, they are able to identify that money if they come across it in a later search. (Tr. 170).

{¶20} Courtney Wilson testified next. She stated that at the time in question she was a drug user. (Tr. 185). She became friends with Jermaine Lewis. (Tr. 186-187). Lewis and another man resided at the apartment that was the subject of the search warrant. (Tr. 186). Wilson stated that she went to the apartment a few times to buy drugs. (Tr. 187-188).

{¶21} On the day in question, Wilson testified that she went to the apartment to buy drugs. (Tr. 188-189). When she arrived Lewis was there along with appellant and another man. (Tr. 188). She did not know appellant or the other man. (Tr. 188). Wilson stated that Lewis asked her to drive the Ford Focus in exchange for more drugs. (Tr. 189, 192). Lewis asked her to drive to Columbiana and then to Salem. (Tr. 192). Wilson agreed. (Tr. 192). Appellant and the other man went with her. (Tr. 192). Wilson testified that they drove to Columbiana, "did a deal", and then went back to Lewis's apartment. (Tr. 193). The three then left again to go to Salem. (Tr. 194). But this time, the police stopped them. (Tr. 196).

{¶22} Wilson testified that when appellant and the other man realized the police were stopping them, they both asked Wilson to take their drugs so they would not get in trouble. (Tr. 196-197). Wilson testified that the drugs appellant and the other man had were a "bag of balls of drugs." (Tr. 197). She specifically stated that both appellant and the other man had drugs on them at the time of the stop. (Tr. 198). Wilson refused to take their drugs. (Tr. 199).

{¶23} Wilson further testified that once she was out of the car, she admitted to Chief Abraham that she was concealing drugs of her own in her vagina. (Tr. 200). And she stated that she told Deputy Grabman that appellant had asked her to hide his drugs. (Tr. 214).

{¶24} Deputy Grabman was the state's next witness. He testified that during the time leading up to the execution of the search warrant, the task force had been watching the apartment in question as it was a "trap house," meaning drug dealers used it to traffic their drugs. (Tr. 223). At the time, Lewis and another man, Calvin McConn, resided at the apartment. (Tr. 228). Deputy Grabman testified that the day prior to the search

warrant, a confidential informant had purchased drugs in Salem from two black males wearing the same clothes appellant and Bonner were wearing on the day of the warrant and driving the same Ford Focus. (Tr. 226).

**{¶25}** On the day in question, Deputy Grabman stated that as he was watching the apartment, he saw Wilson, appellant, and another man get into the Ford Focus and drive away. (Tr. 229). He contacted the Lisbon Police Department and asked that they stop the vehicle. (Tr. 229). The deputy and the task force executed the warrant at the apartment. (Tr. 230). Both Lewis and McConn were present at the time. (Tr. 230). In the apartment, the task force found heroin stamps, crack pipe paraphernalia, miscellaneous prescription pills, and packaging for drugs. (Tr. 235).

**{¶26}** The deputy testified that Lisbon police brought appellant, Bonner, and Wilson back to the apartment. (Tr. 232). When asked by police to provide his name and date of birth, appellant lied. (Tr. 232). Deputy Grabman stated that appellant gave them a false name, false date of birth, and claimed he was from Akron, which was untrue. (Tr. 233).

**{¶27}** Upon speaking with Wilson at the scene, Deputy Grabman learned that appellant had asked Wilson to hide his drugs for him when they were stopped by the police. (Tr. 238). He stated that Wilson told him she did not comply with appellant's request. (Tr. 238). Based on this information, the deputy decided to search appellant and Bonner. (Tr. 239). When he was searching appellant, Deputy Grabman stated that appellant was calm and compliant until he began to search around the back of appellant's waistline. (Tr. 240). The deputy stated that appellant then began to flex and tense his buttocks. (Tr. 241). The deputy asked appellant not to do that but appellant did not comply. (Tr. 241). Deputy Grabman testified that this type of behavior is usually an indication that the person is concealing something in their buttocks. (Tr. 241). At that point, the deputy placed appellant under arrest for obstructing official business based on appellant providing him with a false name and date of birth. (Tr. 241).

**{¶28}** When the deputy moved on to search Bonner, he felt a hard object near Bonner's groin. (Tr. 242-243). He also felt Bonner flex his buttocks and pull away. (Tr. 243). A search of Lewis did not reveal anything. (Tr. 243). Deputy Grabman subsequently placed Bonner and Lewis under arrest too. (Tr. 243).

Case No. 18 CO 0012

**{¶29}** Police transported appellant, Bonner, and Lewis to the booking room in the Lisbon Police Department. (Tr. 244). The three men each had their hands handcuffed behind their backs and were left alone on a bench in the booking room. (Tr. 244). The booking room has a video surveillance camera that recorded the men's interactions while they were alone in the booking room. (Tr. 244-245).

**{¶30}** The surveillance video was played for the jury. (Tr. 254-269; State Ex. 12). Deputy Grabman described what was occurring in the video to the jury as they viewed it. There was no audio. First, the video shows Bonner fidgeting and leaning up against Lewis. (Tr. 254). The video shows Bonner "digging for something, towards the back of his person." (Tr. 254). Bonner leans against Lewis and then leans away from him. (Tr. 254). Lewis then thrusts his hips forward and jams something into the back of his person. (Tr. 254). After that apparent exchange, Bonner switches places with appellant. (Tr. 254). Appellant moves closer to Lewis. (Tr. 254). Appellant then arches his hips forward and digs around for something at the small of his back. (Tr. 255). Appellant then leans against Lewis. (Tr. 255). Lewis once against appears to shove something into the small of his back. (Tr. 255). Deputy Grabman testified that Lewis's actions were consistent with placing something into his buttocks. (Tr. 267).

**{¶31}** After Deputy Grabman completed the booking process, he transported the three men to the Columbiana County Jail. (Tr. 245). The deputy stated that when a person is first brought to the jail they are "dressed out," meaning they remove their street clothes in front of an officer and are given jail clothes to put on. (Tr. 245-246). Deputy Grabman testified that when appellant was dressed out, the officers did not notice anything. (Tr. 247). But when Bonner was dressed out, the officers noticed white chunks consistent with cocaine around his anus. (Tr. 247). And when Lewis was dressed out, the officers found two bags of drugs protruding from his buttocks. (Tr. 247). The first bag was found to contain over eight grams of crack cocaine. (Tr. 247). The second bag was found to contain just over five grams of cocaine, heroin, and Fentanyl. (Tr. 247).

**{¶32}** Jennifer Acurio was the final witness. She is the forensic scientist at the Ohio Bureau of Criminal Identification and Investigation who tested the suspected drugs in this case. Acurio testified that the first drug sample weighed 8.61 grams and tested

positive for cocaine. (Tr. 313, 315). She stated that the second drug sample weighed 5.33 grams and tested positive for cocaine, heroin, and Fentanyl. (Tr. 313, 315).

**{¶33}** Appellant contends the evidence was insufficient to support a tampering conviction because at the time he allegedly concealed the drugs (while he was still in the car after Chief Abraham pulled it over), he was not under investigation for a drug crime. Appellant relies on *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, and *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, for support.

**{¶34}** In *Straley*, the Ohio Supreme Court held that "[a] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Straley*, 139 Ohio St.3d at the syllabus. The Court further stated that the evidence tampered with must have some relevance to an ongoing or likely investigation in order to support a tampering with evidence charge. *Id.* at ¶16. *Barry* reiterated *Straley's* holding.

**{¶35}** The evidence is sufficient to support appellant's conviction for tampering with evidence. Appellant suggests that at the time he concealed the drugs, he was merely a passenger in a car that had been stopped by police and he had no reason to believe a drug investigation was likely or ongoing. But considering all of the evidence of what had transpired before Chief Abraham stopped the vehicle, it is reasonable to conclude that appellant knew that a drug investigation was likely or ongoing.

**{¶36}** Viewing the evidence in a light most favorable to the state, as we are required to do, demonstrates the following. Appellant spent part of his day at a drug trap house. He left the trap house, with his drugs, with Wilson and Bonner and drove to Salem where the three completed a drug sale. The three returned to the trap house and then set out again to make another drug sale. But before they could reach their destination, police stopped them. The stop was based on the search warrant, which included the vehicle. While they were stopped, instead of immediately complying with the officers' orders to get out of the car, appellant moved around inside of the car. One could infer that appellant was hiding his drugs at that point.

{¶37} Appellant was not merely a passenger in a car that happened to get pulled over as he asserts. Appellant's actions throughout the day leading up to the stop and appellant's actions inside the car once it was stopped could reasonably lead the jury to conclude that appellant knew that a drug investigation was likely. Appellant had spent his day in a drug house, with drugs users, and making drug sales. When police stopped the vehicle he was riding in, appellant immediately hid his drugs. Thus, appellant's conviction for tampering with evidence was supported by sufficient evidence.

{¶38} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶39} Appellant's second assignment of error states:

KHALIS COLLINS'S CONVICTION FOR COMPLICITY TO ILLEGAL CONVEYANCE INTO A DETENTION FACILITY UNDER R.C. 2921.36(A)(2) AND R.C. 2923.03 IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶40} In this assignment of error, appellant contends his complicity to illegal conveyance conviction is not supported by sufficient evidence. He claims the state relied on evidence that he passed the drugs to Lewis while they were in the booking room. But he argues that at that time, the drugs were already in the detention facility. Therefore, appellant asserts the conveyance of the drugs had already been completed.

{¶41} Additionally, appellant argues the state failed to prove that he solicited, aided, or conspired with Lewis to transport the drugs from the booking room to the jail. He claims there is no evidence that he intended the drugs to be conveyed into the jail at the time he allegedly gave the drugs to Lewis in the booking room.

{¶42} The jury convicted appellant of complicity to illegal conveyance onto the grounds of a detention facility. Pursuant to R.C. 2921.36(A)(2), "[n]o person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility * * * [a]ny drug of abuse, as defined in section 3719.011 of the Revised Code." And pursuant R.C. 2923.03(A)(1), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense[.]"

{¶43} First, appellant's argument that the booking room at the Lisbon Police Department was a "detention facility" and, therefore, the conveyance took place before he passed the drugs to Lewis must fail. If in fact the booking room meets the definition of "detention facility," then the state provided sufficient evidence to support appellant's conviction by presenting evidence that appellant conveyed a bag of cocaine into the booking room by concealing it in his buttocks.

{¶44} A "detention facility" includes "any public or private place used for the confinement of a person charged with or convicted of any crime in this state[.]" R.C. 2921.01(F). The Lisbon Police Department may not fit this definition. But the Columbiana County Jail clearly meets this definition.

{¶45} If the conveyance took place when Lewis entered the county jail with appellant's bag of cocaine in his buttocks, then there is still sufficient evidence to support appellant's conviction. The evidence, as set out in appellant's first assignment of error and construed in favor of the state, demonstrated the following.

{¶46} Appellant concealed a baggie containing cocaine in his buttocks when the vehicle he was riding in was stopped by police. When police searched appellant at the scene of the search warrant, appellant clenched his buttocks together and refused to comply with officers' request that he not do so. While in booking room, appellant sat next to Lewis and leaned against him. While leaning against Lewis, appellant appeared to remove something from the back of his pants and pass it to Lewis. Lewis then appeared to transfer the item into the back of his pants. Appellant, Lewis, and Bonner were then transferred to the county jail. When Lewis was dressed out in the jail, two baggies of drugs were found in his buttocks.

{¶47} This evidence was sufficient to prove that appellant knowingly conspired with or procured Lewis to transport his baggie containing cocaine into the county jail.

{¶48} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶49} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 18 CO 0012

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**